*13
 
 Nash, J.
 

 The bill is filed, to procure a construction of the will of Joseph Amis deceased. By his will, the testator devised as follows — “ I direct that my children remain with my wife, to be raised and educated Out of my estate: and as one child may become of age, or marry, to have allotted off to such child, as much of my estate as I have given to my daughter Betsy, and put her in possession of. If my wife should die my widow, I direct, that
 
 at her death,
 
 my estate of every description be equally divided between all my children, considering, in the distribution, the part which each child may have received, at its marriage, or when it came of age. In educating my children, I direct, that my son Lewis be continued at College until he graduates: and should the income of my estate justify it, I wish my two sons James and Joseph, to receive a like education; otherwise, the best education the
 
 income
 
 of my estate will a fiord I wish all my daughters, to receive a good English education: should the
 
 income
 
 of my estate fall short of giving them a good practical education, I wish them to receive one,
 
 even at the expense
 
 of the capital of my estate.” The bill sets forth, “that doubts, and difficulties, have arisen between the plaintiff and defendant as to the proper construction of the will; that it is uncertain, whether it was the intent and meaning of the testator, that the estate should be divided, at all events, at the death of his widow, or should be kept together, in the hands of his executors, until the education of his infant daughters, should be completed ; whether or not, the said infant defendants, should be educated out of the estate
 
 free from charge,
 
 and
 
 without accounting therefor,
 
 in the distribution of the same; whether or not, the
 
 whole
 
 of the income of the estate (if the same should be required to give to the infant James, such an education as, by the will, is contemplated and directed) may ber applied to that purpose, so as to throw the education of the infant defendant, Judy P. Amis, entirely upon the capital of the estate ; whether the pro.
 
 *14
 
 perty to be allotted off to each of the testator’s other children, in order to make them equal to his daughter Betsy, as directed by the will, should be valued accord-to the prices of such property,
 
 at the time of the allotments,
 
 respectively, or according to the prices of such property,
 
 at the time the advancement toas made to Betsy ;
 
 and whether, or not, those of the testator's children, to whom, allotments or advancements have already been made, are entitled to any part of the hires which have been received account of such of the negroes, as shall bo allotted to the other children.” These are the points to which our attention has been directed, and upon which our opinion required, and relate to the state of things, as they exist since the death of the widow. We will proceed to answer them in the order in which they are propounded. Mrs. Amis, the widow, is dead, and without having again married. This is the
 
 event,
 
 upon the happening of which, the testator
 
 directs,
 
 a division of his property shall be made. It was, evidently, his desire and intention, that his children should remain with their mother, while she continued his widow ; if she married, her house would acquire another master, to whose support he had no wish the property of his children should contribute. Neither, in the ease of her death, would it likely be in the power of his executor to keep them together ; at least, in that event, his great inducement for having them kept together with their mother, would be taken away. But it is sufficient that the testator has expressly said, that upon her dying his widow, the property shall be divided. lie had
 
 no
 
 intention of binding up the estate any longer.
 

 In answer to the second enquiry, we say that up to the time of the widow’s death, when the general division was to take place, the infant defendants were to be educated out of the general profits of the estate, free from charge, and without accounting for it; and it is reasonable it should bo so. The elder children, who had come of age, or married, had received their education out of that fund,
 
 *15
 
 If the infant children, were, upon a division, made to account for the sums expended upon their education, it would, to that extent, be a diminution of their portion, and give to the elder children, who had received allotments, an increased share, and so far, destroy that equality designed by the testator. He has moreover said, that until the death of the widow', the property should be kept together for the
 
 joint
 
 education of all his children. It was, in truth, given to her for that purpose. The will does not expressly provide, what fund shall defray the expense of educating such of the children as might not have completed their education at the death of the mother, but wo think it is not difficult to ascertain the intention of the testator, upon a reasonable construction of his language. He had two purposes in view ; the one was, the proper education of his children, at all events, and to that he devotes the whole profits of his estate, after the maintenance of the familj', and even a part of the capital if necessary, and to this end, is the direction that the estate shall be kept together, during the life of the wife, with certain slight exceptions. While thus kept together, the children would be educated in succession, as they grew up, and the profits accrued, which the testator thought was, probably, an adequate provision for that purpose. If any surplus of income should remain, after answering those purposes, it would, of course, be an accumulation for the benefit of all the children, while in a course of education. The testator’s other purpose was, that his estate should not be kept together longer than his wife lived, but be divided at his death. There would, of course, after that event, be no general profits, out of which the children could be educated. But it does not follow, that they were
 
 not to he
 
 educated, according
 
 to
 
 the plan laid down in the will, nor that the expense should be defrayed out of the capital of the estate, leaving the profits of the share, allotted to each child to accumulate for his, or her benefit; nor that the expense
 
 *16
 
 should be limited to the profit of the particular child’s share, or if greater, that it should be paid exclusively out of the capital of that share. The two provisions for the education, out of the estate, and, at the same time, for the division of the estate, are to be reconciled as far as possible. This can be more nearly effected, after the division, by appropriating the profits of 'each share, to the nurture and education of the child, to whom it is allotted, and if that should be deficient, making it adequate by an equal contribution from all the other shares, than in any other method. For the share of the child is to bear its proportion of the burthen ; and if the profits of it be sufficient for the education of the owner, it bears no more than its due burthen by having the profits so applied. So, if they be deficient, then it, and all the others must pay an equal quota, towards its supply, fbr the child is to be educated at ail events, provided the profits of the whole, as to the sons, be insufficient. As the bill throws no doubt upon that point, we suppose they are sufficient. As the fund is to be, or rather may have to be, thus raised, in part, by contribution from all the children, the most convenient mode of doing so, is to have an estimate of the amount that will probably be required for the education of each of the infant children, after deducting the profits of each of their respective shares, made by the master, and at once to set apart a fund in the executor’s hands to meet it. Should it not all be expended, the residue will be divisible, when the estate shall be finally settled, or at any time when it shall be ascertained, that it will not be needed for their education.
 

 The third enquiry is, in substance, answered, in replying to the second. We will, however, state, that by the will, the whole of the income, if needed, was a fund for the education of James, irrespective of the effect it might have upon that fund, in the education of Judith. The probability of such a result was certainly in the mind of the testator; the provision is, “ if the inqome of my es«
 
 *17
 
 (James and Judith) a good education, I wish them to receive it, even at the expense of the capital of my estate.” The education of Judith is a charge upon the whole estate.
 

 Upon the fourth enquiry, our opinion is, that the property allotted to the several children, to make them equal to that given to Betsy, is to be valued according to the prices of such property at the time of the advancement to Betsy. A little reflection will show the necessity and propriety of this rule. If, in order to make a division, it were necessary to convert the whole estate into money, or there was money sufficient on hand to comply with the directions of the will, in this particular, how much would each legatee be entitled to receive, in the first instance, and preparatory to a division. Betsy’s advancement was valued at
 
 k 1,800,
 
 and that sum, in money, would be the amount each child would be entito receive; nothing more, or less. This is a legacy, in truth, it is an advancement, and is to be valued such.
 

 The last enquiry is also substantially answered in responding to the second. After each allotment, the so advanced had no claim during the life of the widow, upon the income arising from the property unallotted. The whole income of the will was devoted to maintenance of the wife and children, and the educaof the latter as far as was needed. They have had maintenance and education out of it, up to the time they ceased to be members of the mother’s family.
 

 The bill sets forth, that there are debts still outstand and claims in the South to be collected, which will expensive, and the estate is burthened with an annuity S. Downey of $50.
 

 In directing a division now, it will, of course, be under-that the division is only to be of such parts of the . as are in hand,- reserving a proper fund for the
 
 *18
 
 payment of the annuity, and debts, expenses and charges of administration, and for supplying the deficiency, if any, of the profits of the shares of the respective infant legatees for their education, as before pointed out. And it must be referred to the master, to take an account of the estate, and estimate what fund ought to be reserved for those purposes, and what part of the estate, upon this basis, may be properly divided now, and of what it consists» and to make the division and allotment accordingly.
 

 Per Curiam.
 

 Decreed accordingly.