Filed 10/28/21  Rossdale CLE v. Walton CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ROSSDALE CLE, INC., d/b/a THE ROSSDALE GROUP, LLC,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY WALTON,<br><br>     Defendant and Appellant. | H046441<br>(Santa Cruz County<br> Super. Ct. No. CV179135) |

Plaintiff Rossdale CLE, Inc. sued defendant Timothy Walton for malicious prosecution after Rossdale was granted judgment on the pleadings in an underlying case brought by Walton about unsolicited e-mail marketing.  After a court trial, the court entered judgment in favor of Rossdale on its malicious prosecution cause of action and ordered Walton to pay over $230,000 in damages.  On appeal, Walton argues the trial court erred in finding that Rossdale satisfied the probable cause and malice elements of the malicious prosecution cause of action.  He also questions Rossdale's corporate capacity to sue; challenges the damages award; and belatedly attacks the trial court's denial of his anti-SLAPP motion.  For the reasons stated here, we will affirm the judgment.

## I.     TRIAL COURT PROCEEDINGS

Our factual summary is based on documentary evidence and testimony from the malicious prosecution court trial, supplemented with information from the trial court dockets for both the underlying lawsuit and the malicious prosecution action.

## A. THE UNDERLYING LAWSUIT

Walton, an attorney representing himself in the trial court and on appeal, wrote to the CLE Director of the "Rossdale Group, LLC" in September 2010 regarding allegedly unlawful e-mail advertising. The letter accused Rossdale of sending e-mail advertising to California residents and stated that as a California resident Walton was "protected from such marketing assaults by California's Restrictions on Unsolicited Commercial E-mail Advertisers." (Citing Bus. & Prof. Code, § 17529 et seq.) The letter continued that Rossdale could "remedy the problem of your unlawful advertising through a confession of judgment providing equitable relief pursuant to California Business and Professions Code § 17500." The letter stated that "if we cannot agree on an appropriate remedy, my client is reserving his right to seek damages of $1,000 per email message, and any other relief allowed under the law." (Citing Bus. & Prof. Code, § 17529.5; Civ. Code, § 1770.)

Rossdale refused to settle, and Walton filed suit in late 2010. The original complaint alleged that Rossdale sent unsolicited commercial e-mail to Walton, and it contained four causes of action: violation of Business and Professions Code section 17529.2; violation of Civil Code section 1783; invasion of privacy; and a request for declaratory relief. Walton did not disclose the e-mail address at which he had received messages from Rossdale until a year after he filed suit, when the court entered a stipulated protective order to keep Walton's e-mail address confidential. Walton also produced in discovery copies of the e-mail he received from Rossdale. The "from" line of that e-mail lists the following: " 'CLE Director' <Notifications@TheRossdaleGroup.com>."

The operative complaint in the underlying action was Walton's second amended complaint, which alleged a single cause of action for a violation of Business and Professions Code section 17529.5. (Walton refers in his briefing to a third amended complaint, but does not cite the record and it does not appear in the docket for the underlying case.) The second amended complaint alleged Rossdale had sent commercial

2

e-mail to Walton that "contained header information that included the name 'CLE Director' in the From line, which was not the name of the company sending or advertising in the email." It further alleged that the e-mail "contained header information that purported to come from an email address, 'Notifications@TheRossdaleGroup.com,' which was not the actual address used to send the email." Rossdale moved for judgment on the pleadings, which the trial court granted in May 2012.

## B. THE MALICIOUS PROSECUTION ACTION

Rossdale sued Walton for malicious prosecution in 2014. Walton moved to strike the complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16), which the trial court denied after a hearing. Walton filed two notices of appeal challenging that order (case Nos. H041625 and H041750), but both appeals were dismissed for nonpayment of the statutory filing fee. Walton then filed what he styled a "motion to dismiss" the action in the trial court, arguing Rossdale had neither standing nor jurisdiction to maintain the action because the named plaintiff was a fictitious business name and the corporation to which that name was registered had dissolved. The trial court granted the motion, and Rossdale appealed. A different panel of this court reversed the judgment of dismissal, reasoning that any argument about corporate dissolution did not "raise matters of jurisdiction or standing." (*The Rossdale Group, LLC v. Walton* (2017) 12 Cal.App.5th 936, 939, 945 (*Rossdale I*).)

Walton filed an amended answer on remand, asserting a plea of abatement as an affirmative defense. The amended answer alleged that Rossdale's corporation had been dissolved and that it therefore lacked capacity to maintain the lawsuit. Rossdale later moved to modify the style and caption of the case to change the named plaintiff to Rossdale CLE, Inc., d/b/a The Rossdale Group, LLC. The motion was supported by a declaration from Susan Lunden. Lunden declared that she was the principal of a Florida corporation, Miami Legal Resources LLC, which was originally the registered owner of the fictitious business name The Rossdale Group, LLC. She declared that in 2013 she

3

converted her Florida corporation to a Delaware corporation, Rossdale CLE, Inc. The Florida corporation transferred all assets—including the malicious prosecution lawsuit—to the Delaware corporation. Attached to the declaration were board minutes from the Florida corporation approving the transfer of assets, and a business purchase agreement. Walton opposed the motion, questioning the veracity of the documents attached to Lunden's declaration. The trial court granted the motion.[1]

The case proceeded to a one-day court trial. Lunden testified that the domain name TheRossdaleGroup.com was registered to her. She stated that someone who runs a "WHOIS function"[2] on the internet for that domain name would be directed to Lunden. Regarding corporate status, Lunden testified that the transfer from Miami Legal Resources, LLC to Rossdale CLE, Inc. "occurred in 2013, completed in 2014." She claimed she learned from the State Bar of California that Walton had been admonished for "using that e-mail address that the California bar told [him] to discontinue using." Walton did not object to that testimony. Lunden testified that she prepared a declaration (admitted into evidence with other supporting evidence collectively as exhibit No. 54) that accurately stated the total cost in attorney fees Rossdale spent on the underlying litigation was $239,282.80.

Walton also testified. He stated his original demand letter raised "claims relating to falsity and deception," but acknowledged that those claims were "not specifically laid out in" the demand letter. He admitted on cross-examination that Rossdale's domain name was in the e-mail sender address and that it was traceable. He answered, "Correct,"

---

[1] Despite the trial court having granted the motion, the case arrived at this court with the original caption. We corrected the caption on our own motion to reflect the trial court's decision.

[2] "WHOIS is a public[ly] available online database through which users can access information regarding domains, including the registrant's name, address, phone number, and e-mail address." (*Gordon v. Virtumundo, Inc.* (9th Cir. 2009) 575 F.3d 1040, 1064, fn. 22 (*Gordon*).)

when asked: "And you had no trouble figuring out who to send the letter to -- your demand letter to when you read my client's e-mail, correct?"

Walton called as a witness Rossdale's former counsel, who testified that he withdrew as counsel for Rossdale because he believed Rossdale's corporate status had dissolved. Rossdale then called Lunden as a rebuttal witness, who testified that the former counsel had repeatedly missed deadlines and that "he came up with this [corporate capacity] story to withdraw, and then he kept the money."

The trial court orally "grant[ed] relief to [Rossdale] in the amount of $239,282.80." Walton did not request a statement of decision from the trial court. (Code Civ. Proc., § 632.) Judgment was entered in Rossdale's favor, and this timely appeal followed.

## II. DISCUSSION

Where, as here, a party fails to timely request a statement of decision from the trial court, "all intendments favor the ruling of the trial court and an appellate court must assume the trial court made whatever findings are necessary to sustain the judgment, as long as those findings are supported by substantial evidence." (*Wallis v. PHL Associates, Inc.* (2013) 220 Cal.App.4th 814, 825 (*Wallis*).)

### A. ANTI-SLAPP MOTION

Walton attempts to challenge the trial court's denial of his anti-SLAPP motion. An order denying an anti-SLAPP special motion to strike is appealable. (Code Civ. Proc., § 904.1, subd. (a)(13).) Though Walton initially timely appealed from that order, those appeals were dismissed as abandoned because he did not pay the filing fee. (See case Nos. H041625 and H041750.) Walton's renewed attempt to challenge the order in this appeal (which was filed four years after the trial court decided the anti-SLAPP motion) is therefore untimely. (*Reyes v. Kruger* (2020) 55 Cal.App.5th 58, 68.)

5

## B. ROSSDALE'S CAPACITY TO SUE

Walton contends the "purported plaintiff lacked legal capacity." (Capitalization and bold omitted.) We construe this as an argument that the trial court erred by granting Rossdale's request to amend the named plaintiff to the Delaware corporation, Rossdale CLE, Inc., d/b/a The Rossdale Group, LLC.

The *Rossdale I* court reversed the trial court's judgment of dismissal, finding that the capacity issue Walton raised did not implicate standing or jurisdiction. (*Rossdale I*, *supra*, 12 Cal.App.5th at p. 944.) In doing so, the court explained that while suspension of corporate powers results in a lack of capacity to sue, incapacity is merely a legal disability that can be cured while a case is pending. (*Id.* at p. 945.) The court also confirmed that a party may sue or be sued by its fictitious business name. (*Id.* at pp. 945–946, citing *Emery v. Kipp* (1908) 154 Cal. 83, 86 ["[A] person may adopt any name in which to prosecute business, and may sue or be sued in such a name."].) Walton is correct that *Rossdale I* did not decide the capacity issue, instead leaving that issue open to resolution by the trial court on remand. Because the trial court on remand resolved disputed evidence when granting Rossdale's motion to change the caption, we review its decision for substantial evidence. (*Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1543–1544.)

In granting Rossdale's motion to change the caption of its malicious prosecution action, the trial court implicitly made the following findings. The Rossdale Group, LLC was originally the fictitious business name of the Florida corporation Miami Legal Resources, LLC when Walton sued The Rossdale Group, LLC. The Florida corporation later transferred its assets (including the lawsuit) during the pendency of the litigation to a Delaware corporation, Rossdale CLE, Inc. The documentary evidence Rossdale submitted with its motion supports those findings, and by granting the motion the trial court credited them over Walton's argument that Rossdale's documentary evidence was not genuine. Substantial evidence therefore supports the trial court's decision.

6

Walton arguably forfeited the capacity issue on appeal by not supporting his claim with reasoned argument and citation to relevant authority, other than *Rossdale I*. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066.) His appellate argument also disregards our standard of review and attempts to revisit factual issues resolved by the trial court. He argues "Rossdale has not demonstrated that its timeline of events is accurate nor that the change in legal capacity occurred as it has claimed." But in allowing the caption change, the trial court credited Rossdale's timeline. And Walton makes no argument on appeal that discredits Rossdale's evidence as a matter of law. He cites other evidence that he says calls into question Rossdale's timeline, but we will not reverse a finding supported by substantial evidence merely because other evidence would have supported a different conclusion. (*Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1747 (*Heard*) ["All factual matters must be viewed in favor of the prevailing party and in support of the judgment. All conflicts in the evidence must be resolved in favor of the judgment."].) We also observe that much of the evidence Walton cites is consistent with Rossdale's timeline of events. For example, he notes that Miami Legal Resources, LLC dissolved, but fails to acknowledge the record he cites shows a dissolution date *after* transfer of the Florida corporation's assets to the Delaware corporation.

Walton raises new arguments in his reply, for example citing testimony from Rossdale's prior counsel that he withdrew from the malicious prosecution action because he believed there was no valid corporation. Those arguments are forfeited for not having been raised in his opening brief. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1050.) And even if the contentions had been preserved, Lunden testified that her former counsel made up an excuse to avoid taking responsibility for having missed several deadlines. In the absence of a statement of decision, we assume the trial court credited Lunden's testimony over that of her former counsel. (*Wallis*, *supra*, 220 Cal.App.4th at p. 825.)

7

### C. THE MALICIOUS PROSECUTION FINDINGS

To prevail on its malicious prosecution cause of action, Rossdale had to show that: the underlying action was brought by Walton and terminated in Rossdale's favor; Walton had no probable cause to bring the underlying action; and Walton initiated the underlying action with malice. (See *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1539.) Walton concedes the first element was satisfied, but challenges the trial court's findings as to the other two.

#### 1. There Was No Probable Cause for the Underlying Lawsuit

Walton argues the trial court erred in finding he had no probable cause to bring the underlying action. "[P]robable cause to bring an action does not depend upon it being meritorious, as such, but upon it being *arguably tenable*, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 824.) As probable cause to file suit presents a question of law (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875 (*Sheldon*)), we review the trial court's decision de novo.

The Supreme Court discussed the interaction between state and federal law as applied to regulating unsolicited commercial e-mail in *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334 (*Kleffman*). Kleffman sued multiple interconnected companies (collectively, Vonage) alleging Vonage had sent him unsolicited e-mail advertisements from several domain names that did not mention the name Vonage, but that could all be traced to a single physical address where Vonage's marketing agent was located. (*Id.* at p. 338.) He further alleged that the foregoing practice falsified and misrepresented the true sender's identity. (*Id.* at pp. 338–339.) Kleffman argued the practice violated Business & Professions Code section 17529.5, subdivision (a)(2) (hereafter section 17529.5(a)(2)), which makes it unlawful to send an e-mail advertisement that "contains or is accompanied by falsified, misrepresented, or forged header information." Vonage removed the case to federal district court, which dismissed

the case for failure to state a claim.  While on appeal to the Ninth Circuit, that court certified the following question to the California Supreme Court:  " 'Does sending unsolicited commercial e-mail advertisements from multiple domain names for the purpose of bypassing spam filters constitute falsified, misrepresented, or forged header information under [section] 17529.5(a)(2)?' " (*Kleffman*, at p. 339.)

The Supreme Court noted it was undisputed that the "domain names used to send Vonage's e-mail advertisements, and reflected in the header information of these e-mail advertisements, actually exist and are technically accurate, literally correct, and fully traceable to Vonage's marketing agents," such that the messages did not contain falsified or forged header information.  (*Kleffman*, *supra*, 49 Cal.4th at p. 340.)  The only question remaining for the court was whether the messages contained misrepresented header information.  (*Ibid.*)  Rejecting Kleffman's argument that "misrepresented" under section 17529.5(a)(2) meant not only false representations of facts but also practices that were likely to mislead consumers, the *Kleffman* court concluded that a "single e-mail with an accurate and traceable domain name neither contains nor is accompanied by 'misrepresented ... header information' within the meaning of section 17529.5(a)(2) merely because its domain name is, according to Kleffman, 'random,' 'varied,' 'garbled,' and 'nonsensical' when viewed in conjunction with domain names used in other e-mails." (*Kleffman*, at pp. 341, 347.)

The *Kleffman* court explained that its construction of the statute avoided any preemption issues with the federal CAN-SPAM Act.  That statute " 'supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.' (15 U.S.C. § 7707(b)(1).)" (*Kleffman*, *supra*, 49 Cal.4th at p. 346.)  The Ninth Circuit had concluded in a different case that construing a Washington state law to require "an e-

9

mail's 'from' field to include the name of the person or entity who actually sent the e-mail or who hired the sender [would] constitute[] 'a content or labeling requirement' that 'is clearly subject to preemption.' " (*Ibid.*, citing *Gordon*, *supra*, 575 F.3d at p. 1064.) The *Kleffman* court reasoned that "construing section 17529.5(a)(2) as requiring this kind of [header] information would contravene the rule that courts should, if reasonably possible, construe a statute 'in a manner that avoids *any* doubt about its [constitutional] validity.' " (*Kleffman*, at p. 346.)

Kleffman has since been applied to a different factual scenario. In *Balsam v. Trancos, Inc.* (2012) 203 Cal.App.4th 1083 (*Balsam*), the appellate court affirmed the trial court's decision that a company violated section 17529.5(a)(2) by sending e-mail messages where "the senders' domain names in seven of the e-mails did not represent a real company and could not be readily traced back to Trancos, the owner of the domain names and true sender of the e-mails." (*Balsam*, at p. 1096; italics omitted.) The court concluded that "header information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS." (*Balsam*, at p. 1101.)

The Supreme Court in *Kleffman* construed section 17529.5(a)(2) in a manner to avoid total preemption by the federal CAN-SPAM Act. (*Kleffman*, *supra*, 49 Cal.4th at p. 346.) But Walton's claim was arguably tenable only if the claim fit within *Kleffman's* interpretation of section 17529.5(a)(2) and was not preempted.[3]

The decisions in *Kleffman*, decided before Walton filed the underlying case, and *Balsam*, decided while the underlying case was pending, put Walton on notice that an e-mail with an accurate and traceable domain name does not violate section 17529.5(a)(2).

---

[3] Contrary to California Rules of Court, rule 8.1115, Walton cites a number of unpublished trial court decisions in his opening brief that he contends are relevant to preemption. We do not consider those non-citable materials.

10

(*Kleffman*, *supra*, 49 Cal.4th at p. 347; *Balsam*, *supra*, 203 Cal.App.4th at p. 1101.) The undisputed facts show that Rossdale caused e-mail messages to be sent to an e-mail address controlled by Walton. The messages' "from" line was as follows: " 'CLE Director' <Notifications@TheRossdaleGroup.com>." By clearly identifying itself in the "from" line of the e-mail messages with TheRossdaleGroup.com domain name, Rossdale accurately represented that it was the company causing the e-mail to be sent to Walton and offering a service. Lunden testified that the Rossdale domain name was both registered and traceable to Rossdale via a WHOIS search. Walton offered no evidence to rebut that testimony. To the contrary, Walton admitted on cross-examination that Rossdale's domain name was accurate and traceable, and that he had no trouble determining to whom to send his demand letter. Because the header information to the e-mail messages provided an accurate and traceable domain name for Rossdale, the messages did not violate section 17529.5(a)(2) and no reasonable attorney would have thought that a section 17529.5(a)(2) claim was tenable.

Walton's arguments to the contrary are unpersuasive. He contends that "[u]sing a generic From Name such as 'CLE Director' is a violation of California state law where the sender cannot be identified." But that is not what Rossdale did. Rossdale could be readily identified in its e-mail because the messages' "from" line included an e-mail address showing Rossdale in the domain name: <Notifications@TheRossdaleGroup.com>.

Walton also contends that Rossdale was not the actual sender of the e-mail messages because it used third-party companies to send the communications. That Rossdale used a third party to send the e-mail messages did nothing to change the facts that Rossdale was the company offering continuing legal education services and that the messages were readily traceable to Rossdale. As the Supreme Court noted in *Kleffman*, construing section 17529.5(a)(2) to require the "from" field to include the name of the person or entity who actually sent the e-mail would create a risk of preemption and

11

thereby "contravene the rule that courts should, if reasonably possible, construe a statute 'in a manner that avoids *any* doubt about its [constitutional] validity.' " (*Kleffman*, *supra*, 49 Cal.4th at p. 346.)

Finally, Walton's speculative argument that Rossdale breached its agreements with those third-party companies by sending commercial e-mail is both irrelevant to whether Walton stated an arguably tenable claim and derived from testimony that the trial court excluded after Rossdale's relevance objection.

### 2. Substantial Evidence Supports the Malice Finding

Walton contends the trial court erred by finding that he brought the underlying action with malice. "The 'malice' element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action." (*Sheldon*, *supra*, 47 Cal.3d at p. 874.) Examples of cases brought with an improper purpose include " 'those in which (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.' " (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383.) Whether a defendant acted with malice is a question of fact (*Sheldon*, at p. 874), which we review for substantial evidence.

Walton's initial demand letter accused Rossdale of sending "unlawful advertising" without specifying any aspect in the e-mail advertising that allegedly violated the law. Though it did not immediately demand compensation, Walton's letter stated he was "reserving his right to seek damages of $1,000 per email message, and any other relief

12

allowed under the law."[4]  It is undisputed that Walton did not disclose the e-mail address at which he received messages from Rossdale until over a year after he filed the underlying lawsuit.  When Walton eventually produced the e-mail messages in discovery, he produced them in a format the trial court in the malicious prosecution case characterized as a seemingly "useless rendition of computer code."  Based on the foregoing, the trial court could reasonably conclude that Walton purposefully withheld his e-mail address in order to receive additional messages from Rossdale and increase the liquidated damages he could demand.  The trial court could further conclude that Walton abused the discovery process by producing e-mail messages in a format that hindered resolution of the issues before the court.  Substantial evidence therefore supports the conclusion that Walton was motivated by an improper and malicious purpose when filing and prosecuting the underlying lawsuit.

Walton repeats on appeal innocent explanations for his behavior, arguing that he withheld his e-mail address out of legitimate privacy concerns and that the format of the e-mail messages was useful to expert witnesses because it displayed additional header information.  By entering judgment for Rossdale, the trial court implicitly rejected those justifications, and on appeal any conflicts in the evidence must be resolved in favor of the judgment.  (*Heard*, *supra*, 44 Cal.App.4th at p. 1747.)

As the foregoing evidence adequately supports the judgment, we do not reach the parties' arguments about whether other evidence also supports the malice finding.

### D. THE DAMAGES AWARD

Walton argues the trial court erred by awarding Rossdale $239,282.80 as damages for malicious prosecution.  The "measure of compensatory damages for the malicious

---

[4]  The prevailing party in an action under Business and Professions Code section 17529.5 is entitled to, among other things, liquidated damages of "one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident." (Bus. & Prof. Code, § 17529.5, subd. (b)(1)(B)(ii).)

prosecution of a civil action includes attorney fees and court costs for defending the prior action and compensation for emotional distress, mental suffering and impairment to reputation proximately caused by the initiation and prosecution of the action." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 59 (*Bertero*).) As the award here was one of compensatory damages (consisting of out-of-pocket expenses spent on attorneys) rather than an award of attorney fees, the abuse of discretion standard of review Walton proposes does not apply. Instead, we review the compensatory damages award for substantial evidence. (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078.)

Exhibit No. 54 was admitted into evidence to show Rossdale's expenses from the underlying action. It included a declaration from Lunden stating Rossdale spent $239,282.80 on attorneys in the underlying action; a declaration by an attorney who had worked for Rossdale; annotated time entries from that attorney; and copies of checks reflecting amounts Rossdale paid other attorneys for their legal work on the underlying action. Lunden testified at trial to the accuracy of the figures. Walton did not object to Lunden's testimony, did not file written objections to the documentary evidence, and did not move for a new trial on the basis of excessive damages. Walton's sole objection was that the "total amount is not a calculation of what is reasonable and necessary under the law." Rossdale's documentary evidence provides substantial evidence to support the compensatory damages award, and the recovery was not "so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice." (*Bertero*, *supra*, 13 Cal.3d at p. 64.)

Walton argues on appeal that the trial court erred by not assessing the reasonableness and necessity of the fees claimed, and by awarding fees for work completed by attorneys who were neither authorized to practice law in California nor admitted *pro hac vice*. We find those arguments forfeited for two reasons. First, Walton did not move for a new trial. " 'The point that damages are excessive cannot be raised

14

for the first time on appeal, but must be presented to the lower court on the motion for new trial.' " (*Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 918.)  Second, as to the argument about fees paid to attorneys not admitted to practice law in California, Walton did not object on that basis in the trial court.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["The purpose of this [forfeiture] rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected."].)  As a result, the record is not sufficiently developed to resolve the issue for the first time on appeal, and we see no undisputed evidence in the record that would compel a finding in Walton's favor as a matter of law.

## III.  DISPOSITION

The judgment is affirmed.  Prevailing party Rossdale is entitled to recover its costs on appeal by operation of California Rules of Court, rule 8.278(a)(1).

15

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Danner, J.

**H046441 - *Rossdale CLE, Inc., d/b/a The Rossdale Group, LLC v. Walton***