Filed 6/28/23 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ERIC DUPREE, as Trustee, etc.,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CIT BANK, N.A., et al.,<br><br>    Defendants and Respondents. | A163903<br><br>(Del Norte County Super. Ct. No. CVUJ-2017-1050)<br><br>ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |

BY THE COURT:

The court orders that the opinion filed in this appeal on May 31, 2023, be modified as follows:

On page 1, replace the existing case title with the following title:

JO REDLAND TRUST, U.A.D. 4-6-05,

    Plaintiff,

            v.

CIT BANK, N.A., et al.,

    Defendants and Respondents;

ERIC DUPREE, as Trustee, etc.,

    Movant and Appellant.

The modification effects no change in the judgment.

June 28, 2023                                    BROWN, P. J.

1

Trial Court: Superior Court of California, County of Del Norte

Trial Judge: Hon. Darren McElresh

Counsel: Moskovitz Appellate Team, Myron Moskovitz for Movant and Appellant.

Hinshaw & Culbertson, Peter L. Isola and Brian S. Whittemore for Defendants and Respondents.

Filed 5/31/23 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ERIC DUPREE, as Trustee, etc., | |
| Plaintiff and Appellant, | A163903 |
| v. | (Del Norte County Super. Ct. |
| CIT BANK, N.A., et al., | No. CVUJ-2017-1050) |
| Defendants and Respondents. | |

## I. INTRODUCTION

Before daily life in this country froze on November 22, 1963 at 1:38 p.m. Central Time when the tragic news from Dallas came across the airwaves—or perhaps later that day, which would confirm that our courts always remain open, even in times of crisis—a minor event of little note occurred here in California: A First District Court of Appeal, Division One panel filed its opinion in *Oliver v. Swiss Club Tell* (1963) 222 Cal.App.2d 528 (*Oliver*). Nearly 60 years later, the events in Dealey Plaza on the day *Oliver* was filed continue to reverberate through history. This case shows that *Oliver*, too, is still having ripple effects, here in an obscure corner of California civil procedure.

*Oliver* was, in many respects, a routine summary judgment appeal. But it arose in an odd posture because there was evidence in the record that

1

the only defendant that was a party to the appeal, an unincorporated association, had been merged out of existence in 1934, more than two decades before the case was filed in 1958. That raised a novel, largely evidentiary question: Did statements in an answer filed on behalf of an apparently nonexistent entity operate as a binding admission of the entity's existence, even though the lawyers who filed the answer later sought to withdraw from the case and filed an affidavit saying their client did not exist, pointing to publicly filed dissolution records to prove that fact?

To the *Oliver* panel, it was a matter of "common sense" that "courts sit to settle disputes between existing parties and when the defendant is not a legal person no lawful judgment can be rendered against [it]." (*Oliver*, *supra*, 222 Cal.App.2d at p. 538.) All proceedings in such a case are void *ab initio*, the court declared. (*Id.* at p. 537.) But the panel declined to address whether an amendment substituting a successor corporation would be allowed, since no request for such an amendment had been made in the trial court. (*Ibid.*) And the panel's bottom-line holding was narrow: There was a triable issue of fact as to whether the named defendant continued to exist, so the case was remanded for trial. (*Id.* at pp. 545-546.)

In this case, the unaddressed question in *Oliver* whether an amendment should be allowed to substitute a new party—here, we have a lawsuit that was mistakenly brought in the name of the Jo Redland Trust (the Trust), and the proposed amendment would substitute Eric Dupree, a successor trustee, as plaintiff—is squarely presented. Relying on the void *ab initio* language in *Oliver*, the trial court ruled it had no power to allow a curative amendment substituting Dupree for the Trust. Since the complaint was a nullity from inception, the court ruled, Dupree could not rely on the

2

"relation back" doctrine to avoid a statute of limitations bar, thus rendering the proposed amendment legally futile and unjustifiably late.

We reject this reading of *Oliver* and will reverse. We agree that a *judgment* entered for or against a nonexistent entity is unenforceable. That inarguable principle, however, is just a starting point. It does not answer the precise question before us: When a plaintiff mistakenly brings a lawsuit in the name of someone unrecognized in law as a legal "person" and the oversight goes unnoticed until several years into the proceedings, should we, by legal fiction, treat everything that happened in the course of the lawsuit as if it never occurred—including the filing of the complaint itself—thereby depriving the court of power to allow a curative amendment prior to entry of judgment?

We think not. The complaint in this case was not a nullity as filed. The trial court had jurisdiction in the fundamental sense—that is, it was empowered to hear and decide the type of claims alleged. Although intervener Mortgage Assets Management LLC (MAM LLC) raised a legitimate question as to whether the Trust has any independent legal existence separate from Dupree—a potentially fatal jurisdictional defect—the defect was easily curable by allowing Dupree to substitute into the case by amendment under Code of Civil Procedure section 473, subdivision (a)(1). The court could have, and on this record should have, followed the traditional default rule that amendments to a complaint should be liberally allowed.

## II. BACKGROUND

In 2006, the late Jo Redland, then age 83, obtained a reverse mortgage line of credit from a lender known as Financial Freedom Senior Funding (FFSF), a subsidiary of IndyMac Bank. The line of credit was secured by two parcels of property described by metes and bounds in an exhibit to the mortgage deed of trust. Redland's house was situated on one parcel (Parcel

3

One), a .58-acre plot of land. The other parcel (Parcel Two), 9.4 acres in size, was adjacent to Parcel One.

The borrower on this reverse mortgage line of credit and the owner of Parcels One and Two was the Trust, a legal entity organized under the authority of the Probate Code to hold and manage assets for Redland's benefit during her lifetime. Redland, the trustee of the Trust, passed away in 2015. At that point, Eric Dupree, an attorney and Redland's nephew, became the successor trustee of the Trust.

The line of credit did not require repayment from Redland during her lifetime, but by its terms her death constituted a maturity event that allowed FFSF to accelerate the repayment of the then-outstanding debt, demand immediate payment from her estate, and if the heirs did not repay the outstanding indebtedness in full, to initiate foreclosure proceedings.

After a series of bank failures, corporate acquisitions, and assignments, CIT Bank succeeded to the interests of FFSF in the line of credit loan and the deed of trust securing it; MAM Inc. succeeded to the interests of CIT Bank in the loan and deed of trust; and MAM LLC undertook the role of loan servicer.

After Redland died, MTC Financial, a successor trustee under the deed of trust, sought to foreclose on both Parcel One and Parcel Two. In February 2017, two days before the nonjudicial foreclosure sale was scheduled to take place, the Trust, represented by Dupree as counsel, filed a complaint alleging that the line of credit loan is only secured by one of the two Parcels.

The complaint named FFSF and MTC Financial as defendants (apparently by mistake, since under assignments they had been succeeded by other entities at that point). Seeking declaratory relief and asking the court to quiet title, the complaint alleged that the line of credit loan is secured only by Parcel Two, and not Parcel One (another apparent mistake because this

4

allegation conflicted with two lis pendens notices Dupree filed against both Parcels One and Two).

In August 2018, the Trust filed an amended complaint, adding CIT Bank as a defendant, and alleging that the line of credit loan is secured only by Parcel One, and not by Parcel Two. The amended complaint also pleaded a cause of action for reformation of the deed of trust to reflect the alleged true intent to encumber only Parcel One. Along with the filing of the amended complaint, Dupree filed an amended notice of lis pendens against Parcel One only.

In February 2019, CIT Bank filed a cross-complaint, naming the Trust as cross-defendant and seeking reformation and a declaration quieting title. CIT Bank alleged that, on its face, the deed of trust is clear that Redland and FFSF intended both Parcel One and Parcel Two to be security for the line of credit loan.

Alternatively, CIT Bank alleged that the deed of trust should be reformed in its favor and that the court should declare that the Parcel One security includes an appurtenant right-of-way easement. Without such an easement, CIT Bank alleged, Parcel One would be landlocked, since there is no other access to Redland's house from a nearby state highway.

In September 2020, MAM LLC filed an unopposed motion to intervene,[1] along with a motion to expunge the notices of lis pendens. In its motion to expunge, MAM LLC took the position that the Trust has no probable chance of success on the merits. Thus, MAM LLC argued, under Code of Civil Procedure sections 405.31–405.32 it is entitled to expungement. In support

---

[1] According to a declaration supporting MAM LLC's motion to intervene, "Since CIT no longer has any interest in the [line of credit loan] and [MAM LLC] is the current servicer, [MAM LLC] has moved to intervene in this Action to defend its interest in the property."

5

of this motion, MAM LLC presented both procedural and substantive arguments.

Substantively, MAM LLC argued that reformation is not proper because "the complaint doesn't show there was ever an agreement to make the loan encumber only the residential parcel." Procedurally, MAM LLC argued that the Trust is not a proper party plaintiff, and that as a result, the court lacked subject matter jurisdiction, rendering the action void *ab initio*.

The trial court agreed with MAM LLC's procedural argument and granted expungement, explaining at a hearing on the motion: "It appears to me [counsel for [MAM LLC] is correct that [it] has long been the law that a non-entity cannot maintain suit and that is jurisdictional. And that includes the lis pendens with the suit." Accordingly, the court concluded, the "motion to expunge the lis pendens is well-taken due to lack of jurisdiction. And therefore, the lis pendens is expunged."

MAM LLC promptly filed a motion to dismiss, reiterating its argument that the court lacked jurisdiction. Relying on *Oliver*, the principal case cited by MAM LLC for its jurisdictional argument, the trial court agreed that the naming of the Trust as plaintiff meant the action was void *ab initio* and granted the motion to dismiss, but indicated it was inclined to allow an amendment substituting Dupree as trustee for the Trust.

In June 2021, Dupree responded with a motion seeking leave to file a first amended complaint, consistent with the court's earlier indication that that would be allowed. Dupree submitted a declaration stating that, "I first learned of the error of naming the Trust versus the Trustee when served with MAM LLC's motion to intervene and related motions to expunge the notice of pendency of the action" and argued that, "[u]nder this state's liberal rules of

6

pleading, the right of a party to amend to correct inadvertent misstatements of facts or erroneous allegations of terms cannot be denied."

In opposition, MAM LLC argued that the amendment request was both tardy and futile, since Dupree sought to amend after the statute of limitations deadline passed, more than three years after the filing of the original complaint. The court ultimately agreed with MAM LLC, reversed course, and denied leave to amend. Explaining that it normally takes a liberal attitude toward motions for leave to amend, the court stated that "the case is void. I actually lack authority to make the amendment."

Dupree, an aggrieved party under Code of Civil Procedure section 902, appealed from the ensuing judgment.[2] The notice of appeal named FFSF "et al." as respondents, and CIT Bank and MAM LLC (collectively MAM) appeared and jointly filed a responding brief. MAM filed a motion to dismiss the appeal on two grounds: (1) because the Trust is not a legal entity, this court lacks subject matter jurisdiction, and (2) Dupree failed to file a timely opening brief. We denied that motion without prejudice to reconsidering the jurisdictional argument in conjunction with our resolution of the merits of the appeal. We now decline to reconsider our denial.

---

[2] As a general rule, only a party of record may appeal. (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736; *Howard Contracting, Inc. v. G.A. MacDonald Construction Co., Inc.* (1998) 71 Cal.App.4th 38, 58.) But a nonparty may also have standing to appeal in some circumstances. (*Adams v. Woods* (1857) 8 Cal. 306, 314-315.) The applicable principle is that "No person can bring a writ of error, unless he is a party, or privy to the record, or is prejudiced by the judgment; the rule upon the subject being, that a writ of error can only be brought by. . .[a person] who *would have had the thing, if the erroneous judgment had not been given*." (*Ibid.*, italics added.) Here, the "thing" Dupree "would have had" (*id.*)—if not for the error he challenges—is party of record status.

# III. DISCUSSION

Turning to the merits, the parties disagree on the appropriate standard of review as a threshold matter. According to Dupree, the trial court erroneously concluded it was powerless to allow an amendment, which is a question of law, reviewable de novo. According to MAM, on the other hand, we should review for abuse of discretion, the standard that normally applies to denials of leave to amend. In MAM's view, so long as the trial court reasonably concluded an amendment to the complaint was futile, the court's discretionary choice to deny leave should be upheld.

Dupree has the better of the argument. This appeal turns on two key issues: first, whether the court correctly read *Oliver* to deprive it of power to allow an amendment, and second, whether, if an amendment had been allowed, Dupree's claims were doomed by the applicable statute of limitations. There are some collateral matters to decide, but these are the main issues, and they are issues of law. Thus, we believe this is one of those situations where the correctness of the court's exercise of discretion depended on the legal premises of its analysis. (*Strobel v. Johnson & Johnson* (2021) 70 Cal.App.5th 796, 817.)

## A. *Oliver v. The Swiss Club Tell*

MAM invites us to adopt the reading of *Oliver* that it successfully urged in the trial court: Because the naming of the Trust as plaintiff meant that the court lacked subject matter jurisdiction, MAM contends, the action was void from the outset. According to MAM, not only is it entitled to raise that issue belatedly despite the fact that no other party noticed any problem with the Trust as a plaintiff prior to September 2020, but the defect cannot be cured by amendment because the absence of subject matter jurisdiction means the court is wholly without power to act. We reject this reading of

8

*Oliver*. Before explaining why, a full statement of the backdrop to the case is necessary to a proper understanding of the holding there.

The proceedings in *Oliver* began with a complaint filed in 1958 by Roy Oliver and his wife, who owned property near Mill Valley, for diversion of water from a local stream in a manner that allegedly damaged their property. (*Oliver*, *supra*, 222 Cal.App.2d at pp. 532–533.) There were three named defendants: an unincorporated association identified as "The Swiss Club Tell," the County of Marin, and one Fred Schneider, apparently an officer of the named association. (*Id*. at p. 533 & fn. 3.) When they brought suit, the Olivers did not know the legal status of the Swiss Club Tell or indeed whether it existed at all. They alleged its existence on information and belief. (*Id*. at p. 533.)

An attorney named J. Thaddeus Cline filed a verified answer for the Swiss Club Tell and Schneider. (*Oliver*, *supra*, 222 Cal.App.2d at p. 533.) The answer generally denied the allegations of the complaint, but included the following preamble relating to the Swiss Club Tell: " 'Now comes Swiss Club Tell, an unincorporated association, *if any such organization exists*, one of the defendants above named, and Fred Schneider, served as a defendant or as an officer of said defendant association.' " (*Ibid*., italics added by *Oliver*.) And as to the specific allegation in the complaint that the Swiss Club Tell was an unincorporated association, the answer denied the allegation for lack of sufficient information. (*Ibid*.)

Prior to trial, Cline and attorney John Ehlen, purporting to serve as amici curiae for the court, filed a motion for summary judgment seeking dismissal of the Swiss Club Tell. (*Oliver*, *supra*, 222 Cal.App.2d at p. 534.) Cline supported this friend-of-the-court motion with an affidavit stating that the Swiss Club Tell was a nonexistent entity and had not existed for more

9

than 20 years. (*Ibid*.) According to Cline's affidavit as summarized by the *Oliver* court, "there has been no unincorporated association named or known as Swiss Club Tell since May 21, 1934, on which date articles of incorporation were filed with the Secretary of State" for an entity known as Swiss Club Tell, Inc. (*Ibid*.)[3]

The other attorney of record for the Swiss Club Tell, Ehlen, submitted an affidavit to the same effect. (*Oliver*, *supra*, 222 Cal.App.2d at pp. 534–535.) The court initially granted summary judgment, but that ruling was set aside pursuant to stipulation, after the Olivers moved for relief under Code of Civil Procedure section 473. (*Oliver*, at p. 535.) Cline and Ehlen then filed a notice of withdrawal as attorneys "on the ground that they represented no party to the action." (*Ibid*.) After hearing argument (on the day the case came on for trial) on the notice of withdrawal and the still-pending summary judgment motion, the trial court granted summary judgment for the Swiss Club Tell and dismissed it from the case. (*Id*. at p. 536.)

On the Olivers' appeal, the court stated the issue to be decided as follows: "Was the trial court justified in granting a summary judgment in favor of defendant The Swiss Club Tell, an unincorporated association?" (*Oliver*, *supra*, 222 Cal.App.2d at p. 532.) Before answering that question, the court began by stating that "[t]he problem before us is not one of misnomer or of lack of legal capacity due to some legal disability, but whether the defendant sued is an existent person. A civil action can be maintained

---

[3] The absence of the Swiss Club Tell, Inc. appears to have been a deliberate, strategic choice by the Olivers. "[T]he trial court suggested that a formal motion to amend so as to bring in [the] corporation as a party might be made." (*Oliver*, *supra*, 222 Cal.App.2d at p. 537.) But "[t]his suggestion was not pursued by plaintiffs' counsel, who . . . indicated that he believed that the statute of limitations had run against the corporation." (*Ibid.)*

only against a legal person, i.e., a natural person or an artificial or quasi-artificial person, a nonentity is incapable of suing or being sued." (*Id.* at p. 537.) "Where a suit is brought against an entity which is legally nonexistent," the court explained, "the proceeding is void *ab initio* and its invalidity can be called to the attention of the court at any stage of the proceeding." (*Ibid.*)

After making these preliminary observations, the court went on to reverse the grant of summary judgment for the Swiss Club Tell, finding there was a triable issue of fact as to its existence. (*Oliver, supra*, 222 Cal.App.2d at pp. 541–542, 546.) That holding turned on whether "the denial in [the] answer, upon information and belief, of the allegation that defendant is an unincorporated association amounts to an admission of that allegation." (*Id.* at p. 538.) The court explained: "This assertion is predicated upon the argument that the existence or nonexistence of defendant as an unincorporated association is a matter of public record," is "not deniable upon information and belief," and thus the alleged fact of its existence "stands undenied because no issue was tendered as to whether defendant is an unincorporated association." (*Ibid.*)

The court rejected the Olivers' attempt to establish the Swiss Club Tell's existence either by admission in the answer or based on the presumptive knowledge any answering defendant would have had from public records. (*Oliver, supra*, 222 Cal.App.2d at pp. 538–541.) "[W]e fail to see how a perusal of the records showing the existence of a corporation known as the Swiss Club Tell, Inc., would establish the existence or nonexistence of The Swiss Club Tell, an unincorporated association, unless such records affirmatively show that such unincorporated association was merged in the corporation," the court explained. (*Id.* at p. 539.)

11

The court noted the pretrial conference order treated the Swiss Club Tell's existence as an issue remaining for adjudication. (*Oliver*, *supra*, 222 Cal.App.2d at p. 541.) And the Cline and Ehlen affidavits failed to provide a sufficient basis to resolve the issue on the summary judgment record. (*Id*. at pp. 543-545.) The court explained that the affidavits were not only hearsay, but were too conclusory to establish that the requisite statutory procedure for dissolving an unincorporated association by merger into a successor corporation had occurred. (*Ibid.*)

## B. *The Trial Court Had Power to Grant Dupree's Motion to Amend*

The precise holding in *Oliver*—that there was a triable issue of fact, warranting reversal and remand for trial—deals only with the factual and legal existence of the Swiss Club Tell, not with whether a successor entity, Swiss Club Tell, Inc., did exist and could properly appear. (*Oliver*, *supra*, 222 Cal.App.2d at pp. 541–542, 546.) The *Oliver* court expressly declined to reach the question before us: Whether leave should have been granted to add another party that all parties agree exists and has the capacity to appear. When the Olivers for the first time on appeal formally requested leave to add the Swiss Club Tell, Inc. as a defendant, the court declined to address the issue, explaining, "We need not decide whether such amendment may be made in the instant case because such an amendment is properly addressed to the trial court." (*Id*. at p. 537.)

We pick up where the *Oliver* court left off. In the trial court, and here on appeal as well, MAM frames the amendment issue as a matter of subject matter jurisdiction. This issue is more difficult than it seems at first blush. On the threshold issue of legal "capacity" versus legal "existence," there is a degree of merit to the arguments from both sides. Dupree argues that, unlike in *Oliver*, the question is one of lack of legal capacity to sue. " 'There is a

12

difference between the *capacity* to sue, which is the right to come into court, and the *standing* to sue, which is the right to relief in court.' [Citation.] 'Incapacity is merely a legal disability, such as infancy or insanity, which deprives a party of the right to come into court. The right to relief, on the other hand, goes to the existence of a cause of action.' " (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604.)

Unlike defects of "fundamental" jurisdiction, which deprive a court of all power to act (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 (*Abelleira*)) and may be raised at any time (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 538), lack of capacity, which results in judicial action "in excess of jurisdiction" (*Abelleira*, at p. 288), must be raised by plea in abatement at the earliest opportunity, and is waivable (*Color-Vue, Inc. v. Abrams*, *supra*, 44 Cal.App.4th at p. 1604). Judicial acts in the absence of fundamental jurisdiction are wholly "void," while judicial acts in excess of jurisdiction are merely "voidable." (*Thompson Pacific Construction*, at pp. 537–538.)[4] When

---

[4] For example, "[i]t has been repeatedly declared that the absence of a guardian or conservator for a minor or person lacking legal capacity is only an 'irregularity' and not a jurisdictional defect." (4 Witkin, Cal. Procedure (6th ed. 2021) Pleading, § 81, p. 142; see *White v. Renck* (1980) 108 Cal.App.3d 835, 839-840; *Johnston v. Southern Pacific Co.* (1907) 150 Cal. 535, 539.) "[B]ecause the court has jurisdiction of the subject matter and the parties, the minor or person lacking legal capacity may 'waive' the defect [citation], or may be estopped to attack the judgment." (4 Witkin, *supra*, § 81 at p. 143.) "The court, however, has no authority to disregard the statutory requirement, and a judgment so rendered is in excess of its jurisdiction and voidable by the minor." (*Ibid.*; see *Keane v. Penha* (1946) 76 Cal.App.2d 693, 696.) Similarly, "the suspended status of corporate powers at the time of filing of action by a corporation does not affect the jurisdiction of the court to proceed" and "such a suspension after the filing of action . . . but before rendition of judgment likewise does not deprive the

MAM intervened in September, it took the position, correctly, that the Trust lacks the capacity to sue or be sued. According to Dupree, this was a curable defect that, at worst, made any eventual judgment voidable. Particularly since "[a]s a general rule an intervener takes a suit as he finds it [citations], and he cannot avail himself of irregularities the original parties have expressly or impliedly waived" (*Hospital Council of Northern Cal. v. Superior Court* (1973) 30 Cal.App.3d 331, 336), this line of argument has some appeal.

But MAM's position is not without force in its own right. MAM correctly points out that a trust is simply a collection of assets held for the benefit of designated beneficiaries (*Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1390–1391), and as such, has no ability to sue or otherwise act independently from a trustee. (*Portico Management Group, LLC v. Harrison* (2011) 202 Cal.App.4th 464, 473; *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 521–522 [" 'because "[a] trust is not a legal entity," it "cannot sue or be sued, but rather legal proceedings are properly directed at the trustee" ' "]; Code Civ. Proc., § 680.280 [definition of " 'Person' " does not include trust].)[5] According to MAM, the problem here runs deeper than lack of capacity to sue. A trust lacks capacity to sue *because* it has no independent

court of jurisdiction or render the judgment void and subject to collateral attack after it has become final." (*Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 371.) Corporate suspension is merely lack of capacity and may be corrected by reinstatement prior to trial. (*Id.* at pp. 370–372.)

[5] See *J. C. Peacock, Inc. v. Hasko* (1960) 184 Cal.App.2d 142, 152 (" '[A]n action may not be maintained in the name of a plaintiff who is not a natural or an artificial person having legal entity to sue or be sued' "); *Tanner v. Best* (1940) 40 Cal.App.2d 442, 445 (reversing judgment against decedent's "estate" because "[t]he 'estate' of a decedent is not an entity known to the law. It is neither a natural nor an artificial person. It is merely a name to indicate the sum total of the assets and liabilities of a decedent, or of an incompetent, or of a bankrupt.").

14

legal existence. As a Fourth District, Division Three panel explained in *Presta v. Tepper* (2009) 179 Cal.App.4th 909, 913–914, while a corporation is considered a jural person (Code Civ. Proc., § 17, subd. (6)), a trust is not. A trust is merely " ' " 'a *fiduciary relationship with respect to property*.' " ' " (*Presta,* at p. 914; accord, *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1132, fn. 3.) Under no circumstances can a trust be legally vivified and given capacity to sue or be sued.

To choose which of these positions is correct as applied on this record, we need not decide whether a judgment for the Trust in this case would have been "void" or merely "voidable." There was no such judgment. But on the narrower question of legal "existence" versus legal "capacity," we agree with MAM. It is indeed fair to say, as the *Oliver* court said, that the issue is "not one of misnomer or of lack of legal capacity due to some legal disability, but whether [the Trust] is an existent person." (*Oliver*, *supra*, 222 Cal.App.2d at p. 537.) MAM is right that the Trust has no legal existence and had none when this case was filed, at least not separate from the trustee. Looking at things through this prism, the legal status of a trust for purposes of the right to sue or be sued is no different from that of a dead person. On the premise that we do indeed have an issue of legal existence in this case, MAM then claims that *Oliver* controls, which is what it successfully argued in the trial court. Because this case was "void *ab initio*" (*ibid.*), MAM argues, the trial court correctly concluded that no amendment is possible—there is simply nothing to amend.

We decline to go that far. While we agree with MAM's premise, we reject its conclusion. Because the *Oliver* panel expressly declined to say whether a properly presented curative pleading amendment would be allowed, that issue is not embraced in its holding. (*Orchard Estate Homes,*

15

*Inc. v. Orchard Homeowner Alliance* (2019) 32 Cal.App.5th 471, 476 ["Only the ratio decidendi of an appellate opinion has precedential effect."].) More fundamentally, however, and wholly apart from whether the void *ab initio* passage in *Oliver* was a holding or merely dicta, we decline the invitation to apply *Oliver* in the aggressive manner MAM urges because we think its reading of the case is legally unsound. MAM would have us treat the entire proceeding here as void *ab initio*. Although the *Oliver* opinion does at one point say that "[w]here a suit is brought against an entity which is legally nonexistent, the *proceeding* is void *ab initio*" (*Oliver, supra,* 222 Cal.App.2d at p. 537, first italics added), the thrust of the discussion in that passage is directed to entry of judgment. (*Id.* at p. 538 ["when the defendant is not a legal person no lawful *judgment* can be rendered against such a nonentity" (italics added)].) To adopt MAM's reading of this reference to a void "proceeding," we think, would continue to propagate in our law an archaic rule that *Oliver* itself did not follow.[6]

_____

[6] The concept of voidness *ab initio*, sometimes known as the nullity doctrine, was ubiquitous in English common law practice on the theory that all proceedings in a court that lacked jurisdiction were *coram non judice*— meaning " 'in presence of a person not a judge' " (Dane, *Jurisdictionality, Time, and the Legal Imagination* (1994) 23 Hofstra L.Rev. 1, 23, fn. 59 (Dane); see *The Case of the Marshalsea* (K.B. 1612) 77 Eng.Rep. 1027, 1038–1039)—and thus were a complete legal nullity, with no binding force or effect on anyone. The idea was never anything more than legal fiction. In the eyes of the law, this ancient rule held, "th[e] judge or court" without jurisdiction was "no different from any person on the street. . . . She might wear a robe and wield a gavel. . . . But absent jurisdiction, . . . [t]he judge without jurisdiction might as well be an imposter." (Dane, *supra,* at pp. 23-24, fns. omitted.) The nullity doctrine developed in England as a way of establishing the supremacy of the royal courts over ecclesiastical courts and other tribunals with which they shared overlapping jurisdiction on various subjects. (Dobbs, *The Decline of Jurisdiction by Consent* (1961) 40 N.C.

16

Consider the disposition in *Oliver*:  The appellate panel remanded for trial.  If, on remand, after finding the facts and applying the law at trial, the trial court determined that the alleged unincorporated association defendant was "dead, and [could] no more be proceeded against as an existing corporation than could a natural person after his death" (*Crossman v. Vivienda Water Co.* (1907) 150 Cal. 575, 580, superseded by statute as stated in *Greb v. Diamond Internat. Corp.* (2013) 56 Cal.4th 243, 249 & fn. 7), the case would have been subject to dismissal under then prevailing law.  But that does not mean everything done in the case prior to entry of judgment— including the filing of the complaint itself—was, by legal fiction, a nullity.  Every court has jurisdiction to determine its own jurisdiction (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 326; accord, *Abelleira, supra*, 17 Cal.2d at pp. 302–303), which explains why on remand in *Oliver* the trial court had jurisdiction to try the issue of whether the unincorporated association defendant actually existed.

Because a superior court always has power to determine its own jurisdiction, it makes no sense to treat a potentially fatal jurisdictional pleading defect as a problem that automatically deprives the court of power to allow a curative amendment.  That would mean the original pleaded allegations must always be taken as conclusive on any question of jurisdiction raised on the face of a complaint, which is precisely the opposite of what the *Oliver* court held.  Under common law pleading practice once followed in England, where plaintiffs were required to plead jurisdictional

---

L.Rev. 49, 66–68 (Dobbs).)  As carried over in the United States in the 19th century, the nullity doctrine continued to have some purchase, but today it is a doctrine whose "historical justifications" long ago disappeared.  (Note, *Filling the Void: Judicial Power and Jurisdictional Attacks on Judgments* (1977) 87 Yale L.J. 164, 171.)

17

facts affirmatively,[7] perhaps such a rule made sense in order to sort out the jurisdictional orbits of different satellites of the royal courts. But under modern notice pleading practice in the California courts, where "[a]llegations of the jurisdictional facts in the pleadings are . . . unnecessary" (*Estate of Keet* (1940) 15 Cal.2d 328, 335), it does not.

The complaint in this case, as originally pleaded, sought reformation, with an accompanying claim for declaratory relief seeking to quiet title. These are well-recognized causes of action and remedies that the Legislature has specifically authorized.[8] Plainly, there was jurisdiction over the types of claims alleged, which gave the court power "to adjudicate the type of controversy involved in the action." (Rest.2d Judgments, § 11.) And CIT Bank proceeded to answer the complaint in February 2019 without raising any issue of jurisdiction, either over the subject matter or over any of the parties. (*Abelleira*, *supra*, 17 Cal.2d at p. 288 [lack of "fundamental" jurisdiction means entire "absence of authority over the subject matter or the parties"].) Under these circumstances, the complaint Dupree mistakenly filed in the name of the Trust was presumptively within the trial court's subject matter jurisdiction. Although MAM LLC sought to overcome that presumption by challenging the Trust's legal existence, Dupree made an undisputed factual showing that he was willing to address this issue by amendment to the complaint.

---

[7] See Dobbs, *supra*, 40 N.C. L.Rev. at p. 73 ("[T]he allegation of jurisdiction was necessary and without it jurisdiction did not exist. The allegation itself, in other words, was jurisdictional. [Fn. omitted.]" (Citing *Moravia v. Sloper* (C.P. 1737) 125 Eng.Rep. 1039.)).

[8] Civil Code section 3399 (reformation); Code Civil Procedure section 1060 (declaratory relief); *id.*, section 760.010 et seq. (quiet title).

We see no justification for treating the complaint as if it were never filed, effectively erasing it from the docket retroactively—and thus blocking any curative amendment—simply because MAM LLC, appearing in the case as intervener more than three years after it was filed, spotted an issue of subject matter jurisdiction and objected on that ground. Under the modern approach to jurisdictional objections, a court has inherent power to rule against its own jurisdiction, or to rule in favor of it. (*Abelleira*, *supra*, 17 Cal.2d at pp. 302–303; 2 Witkin, *supra*, Jurisdiction, § 358; Rest.2d Judgments, § 12, com. c.) And in our view, the power to address a potentially fatal jurisdictional pleading defect includes the discretionary power to allow a curative amendment. (Cf. *Warburton/Buttner v. Superior Court* (2002) 103 Cal.App.4th 1170, 1181 [where challenge to subject matter jurisdiction over Native American tribe was raised on sovereign immunity grounds, trial court was empowered to " ' "engage in sufficient pretrial factual and legal determinations to ' "satisfy itself of its authority to hear the case" before trial' " ' "].) Indeed, presented with undisputed facts demonstrating that an existing party with capacity to sue did exist and had been mistakenly omitted from the original complaint, the trial court's refusal to exercise its discretion amounted to a failure to discharge its duty to assume jurisdiction. (2 Witkin, *supra*, Jurisdiction, § 374, p. 992 ["A refusal to exercise an existing judicial discretion is a refusal to exercise jurisdiction."].)

Confronted with the same argument MAM makes here, an appellate panel in *Friedel v. Edwards* (Fla.Dist.Ct.App. 2021) 327 So.3d 1242, refused to adopt the view that "the filing of a civil complaint in the name of a deceased plaintiff should be considered a legal nullity" (*id.* at p. 1244), thereby depriving the trial court of power to allow a curative amendment as a matter of Florida law. While ultimately resolving the appeal in that case on

19

other grounds (*id*. at p. 1245), the *Friedel* panel explained: "There is perhaps an arguable justification for tethering a predeceased plaintiff's status to subject matter jurisdiction because civil lawsuits—and, hence, a civil court's adjudicative powers—must be initiated by a plaintiff or petitioner's action," but "courts routinely allow substitution of plaintiffs where an originally named plaintiff lacked sufficient standing to maintain an asserted cause of action." (*Id*. at p. 1245.) The panel noted that some cases decided under the law of other states take the opposite view—it cited *Oliver* as one of two examples—but it concluded that these cases run against "important and well-developed principles of liberally allowing amendments." (*Id.* at p. 1245, fn. 2.)[9]

As a matter of California law, we agree. Our only quibble with *Friedel* is that we do not think *Oliver*, correctly interpreted, supports a different analysis. While that case might plausibly be given the reading MAM urges

---

[9] In addition to *Oliver*, the *Friedel* panel cited *Volkmar v. State Farm Mut. Auto. Ins. Co.* (Ill.Ct.App. 1982) 432 N.E.2d 1149, 1151. There are a number of other such decisions. Our research has turned up state court appellate precedent relying on the nullity doctrine to bar curative pleading amendments in at least 11 other states. (See, e.g., *Owen v. Grinspun* (Tenn.Ct.App. 2022) 661 S.W.3d 70, 72; *Crenshaw v. Special Adm'r of Estate of Ayers*, 2011 Ark. 222, *6 [2011 WL 1896766, *3]; *Garlock Sealing Technologies, LLC v. Pittman* (Miss., Oct. 14, 2010, Nos. 2008–IA–01572–SCT, 2008–IA–01584–SCT, 2008–IA–01599–SCT) 2010 WL 4009151, *3-*4; *Back-Wenzel v. Williams* (Kan. 2005) 109 P.3d 1194, 1195–1196, 1198; *Black Canyon Coalition v. Bd. Of Co. Com'rs* (Colo.Ct.App. 2003) 80 P.3d 932, 933–935; *Gregory v. DiCenzo* (R.I. 1998) 713 A.2d 772, 775; *Isaac v. Mount Sinai Hosp.* (Conn.Ct.App. 1985) 490 A.2d 1024, 1026–1027; *Mathews v. Cleveland* (Ga.Ct.App. 1981) 284 S.E.2d 634, 636; *Downtown Nursing Home, Inc. v. Pool* (Ala. 1979) 375 So.2d 465, 466; *Brickley v. Neuling* (Wis. 1950) 41 N.W.2d 284, 285; *Proprietors of the Mexican Mill v. Yellow Jacket Silver Mining Company* (1868) 4 Nev. 40.

here, we view the *Oliver* panel's passing reference to the nullity doctrine as nothing more than rote repetition of outmoded jurisdictional terminology from a bygone era.  Under the California Code of Civil Procedure, "The policy of great liberality in permitting amendments at any stage of the proceeding was declared at an early date and has been repeatedly restated."  (5 Witkin, *supra*, Pleading, § 1237, p. 647.)  This rule applies to amendments changing parties, *adding new parties*, and correcting erroneous names.  (*Id.*, § 1229; *Drotleff v. Renshaw* (1949) 34 Cal.2d 176, 181–182; *Rabe v. Western Union Tel. Co.* (1926) 198 Cal. 290, 299–300.)  Nothing in *Oliver* compels the adoption of an exception to that default rule.[10]

Our conclusion that the trial court overread *Oliver* is consistent with how we treat party defects generally under the Code of Civil Procedure.  Such defects do not typically deprive courts of power to act.  "[F]ailure to join an 'indispensable' party is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties before it which will stand."  (*Kraus v. Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 364.)  It is for reasons of equity and convenience, and not because it is without power to

---

[10] In so holding, we join a substantial minority of other state appellate courts, at least eight, counting the *Friedel* decision in Florida.  (See, e.g., *Ashton Properties, Ltd. v. Overton* (Colo.Ct.App. 2004) 107 P.3d 1014, 1017; *White v. Helmuth* (Mass.Ct.App. 1998) 700 N.E.2d 300, 301–302; *Marcus v. Art Nissen and Son, Inc.* (Ill.Ct.App. 1991) 586 N.E.2d 694, 697–698; *Eberbach v. McNabney* (Ind.Ct.App. 1980) 413 N.E.2d 958, 962; *Hamilton v. Blackman* (Alaska 1996) 915 P.2d 1210, 1217–1218; *Burcl v. North Carolina Baptist Hosp., Inc.* (N.C. 1982) 293 S.E.2d 85, 94–95; *Thomas v. Grayson* (S.C. 1995) 456 S.E.2d 377.  Of course, state court pleading regimes—which are dictated by statute or rule, and ultimately by each state's constitution— vary state by state, so the fact there is a split in state court appellate authority on this point is not surprising.

21

proceed, that the court often should not proceed with a case where it determines that an "indispensable" party is absent and cannot be joined. (*County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1149.)  The situation we have here is no different. Dupree may have been an indispensable party, but his absence did not deprive the court of fundamental jurisdiction.

C. ***The Trial Court Abused Its Discretion in Denying Leave To File an Amended Complaint Substituting Dupree as The Plaintiff***

Any pleading may be amended as of right before an answer or demurrer is filed (Code Civ. Proc., § 472), and thereafter "[t]he court may, in furtherance of justice, . . . allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect."  (Code Civ. Proc., § 473, subd. (a)(1).)  Under Code of Civil Procedure section 473, subdivision (a)(1), a court has ample discretion to deny a motion for leave to amend where a proposed amendment is legally futile or where there has been inexcusable delay in making the motion, but this discretion is not without limits.  To show an abuse of discretion, the plaintiff has the burden of demonstrating that "there is a reasonable possibility the plaintiff could cure the defect with an amendment."  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  " 'Leave to amend should be denied only where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but under substantive law, no liability exists and no amendment would change the result.' "  (*Howard v. County of San Diego* (2010) 184 Cal.App.4th 1422, 1428.)

Dupree has carried his burden of showing he could have cured the party defect by substituting Dupree for the Trust.  We see no basis for refusing that proposed amendment.  While a denial of leave to amend a

22

complaint will generally not be disturbed on appeal absent clear abuse of discretion (*Marvin v. Marvin* (1976) 18 Cal.3d 660, 667, fn. 2), we conclude there was such an abuse here case because of the unsound legal premises the trial court relied upon in applying the nullity doctrine. We so conclude with respect to the court's alternative grounds as well. After explaining that it had no power to allow an amendment substituting Dupree into the case, the trial court added for good measure that the proposed amendment "appears to . . . be four years too late and not authorized by law as the new party circumvents the statute of limitations." The court also pointed out that "the defendant is prejudiced due to the dilatory pleading practice of the plaintiff who has been on notice since [the] motion to . . . expunge . . . [the] lis pendens [was made] well over a year ago." We disagree that either prong of this alternative rationale warranted denial of the amendment, here too as a matter of law.

### 1. Futility

Focusing first on the issue of when the relevant limitations period accrues, MAM points out that a claim for reformation of an instrument based on fraud or mistake is subject to a three-year statute of limitations. (Code Civ. Proc., § 338, subd. (d); *Welsher v. Glickman* (1969) 272 Cal.App.2d 134, 140 [reformation of deed due to mistake]; *Tarke v. Bingham* (1898) 123 Cal. 163, 165–166 [reformation of mortgage due to mistake].) According to MAM the late Ms. Redland must be presumed to have read the terms of the deed of trust when it issued, thus triggering the applicable limitations period upon its execution in 2006. Since that time, MAM argues, the three-year statute long ago expired.

This analysis is too simplistic. While it is true that a party to a contract is charged with knowing its terms (*Madden v. Kaiser Foundation*

*Hospitals* (1976) 17 Cal.3d 699, 710; *Markborough California, Inc. v. Superior Court* (1991) 227 Cal.App.3d 705, 716 ["The parties are bound by the terms of the contract even if they do not read it"]), a signatory's constructively charged knowledge at execution does not necessarily start the running of the statute of limitations for a reformation action. (*Western Title Guar. Co. v. Sacramento & San Joaquin Drainage Dist.* (1965) 235 Cal.App.2d 815, 825 (*Western Title*) [applying predecessor of Code of Civil Procedure section 338, subdivision (d)].) More accurately stated, the rule is—it depends.

" ' "It has been frequently decided that the mere failure of a party to read an instrument with sufficient attention to perceive an error or defect in its contents will not prevent its reformation at the instance of the party who executes it carelessly." ' " (*Engebrecht v. Shelton* (1945) 69 Cal.App.2d 151, 154–155.) In *Western Title,* for example, the court stated, "the mere fact that respondent and his predecessor in interest knew of or read the written description would not bar reformation if the negligence was excusable. 'The fact that the party seeking relief has read the instrument and knows its contents does not prevent a court from finding that it was executed under a mistake.' " (*Western Title, supra,* at p. 825.)

Thus, the initial question here is whether Ms. Redland's failure to discover the alleged mistake in the deed of trust in 2006 and bring a claim for reformation immediately is excusable. But " '[w]hether the failure to discover a mistake in a written document is inexcusable negligence so as to bar a party from the right to reformation is a question of fact for the trial court.' " (*Engebrecht v. Shelton, supra,* 69 Cal.App.2d at p. 154.) We think the record discloses sufficient evidence to raise a factual issue as to excusability. According to Dupree's declaration submitted in opposition to MAM's motion,

24

Ms. Redland was 83 years old and unrepresented when she entered into this complex reverse mortgage transaction.

That leads us to the relation back doctrine. Even if we look at the statute of limitations deadline as February 2020, three years after Dupree discovered what he alleges is a mistake in the trust language—a deadline which passed before he moved to amend in June 2021—the filing date for any amended complaint would relate back to February 2017, when the original complaint was filed. (*Austin v. Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596; *Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 934 ["an amended complaint relates back to the filing of the original complaint, and thus avoids the bar of the statute of limitations, so long as recovery is sought in both pleadings on the same general set of facts"].) Reprising a variation on its argument that the trial court lacked subject matter jurisdiction, MAM argues that the relation back doctrine does not apply because the original complaint was void *ab initio*.

Other than *Oliver*, MAM cites no California authority for the idea of voidness *ab initio*. It does, however, cite some federal authority. (See *Fund Liquidation Holdings v. Bank of America Corp.* (2d Cir. 2021) 991 F.3d 370, 384 (*Fund Liquidation Holdings*) [plaintiff funds lacked standing where they "did not legally exist when the case was filed"]; *House v. Mitra QSR KNE LLC* (4th Cir. 2019) 796 Fed.Appx. 783, 785–786 [refusing to allow substitution of new plaintiff in place of deceased plaintiff and relate claims back to original filing, " 'as if it had been originally commenced by the real party in interest,' " because the defect was jurisdictional in nature].)

These federal cases do not advance MAM's cause. Quite the contrary, they reinforce our conclusion that its reading of *Oliver* is incorrect. The Second Circuit panel in *Fund Liquidation Holdings* explains, "Corporate

25

dissolution implicates two potentially distinct legal concepts: capacity to sue and legal existence." (*Fund Liquidation Holdings*, *supra*, 991 F.3d at p. 382.) As the panel then points out, "the former is non-jurisdictional in nature" because "[c]apacity to sue addresses only whether a person or company that possesses an enforceable right may act as a litigant." (*Ibid*.) Thus, the panel concludes, lack of capacity is non-jurisdictional and can be waived. "The same, however, cannot be said for legal existence." (*Ibid*.)

Addressing the separate and more difficult problem of legal existence, the *Fund Liquidation Holdings* panel goes on to make another key point. "Because one elemental precondition for meeting the case-or-controversy requirement" under Article III of the federal Constitution "is a claimant with standing [citation], it must be that the non-existence of the supposed claimant is a problem of constitutional magnitude" where the non-existence predates the filing of the complaint. (*Fund Liquidation Holdings*, *supra*, 991 F.3d at p. 383, fn. 7.) Even then, however—as *Oliver* illustrates under California law—the mere suggestion of the original plaintiff's nonexistence does not necessarily defeat subject matter jurisdiction. (*Id*. at p. 386.) "Article III is satisfied so long as a party with standing to prosecute the specific claim in question exists at the time the pleading is filed. If that party (the real party in interest) is not named in the complaint, then it must ratify, join, or be substituted into the action within a reasonable time. Only if the real party in interest either fails to materialize or lacks standing itself should the case be dismissed for want of subject-matter jurisdiction." (*Ibid*.)

The *Fund Liquidation Holdings* panel acknowledges, to be sure, that federal authority on these issues is "a mixed bag." (*Fund Liquidation Holdings*, *supra*, 991 F.3d at p. 381.) Some federal courts hold that an Article III standing defect on the face of a complaint is non-curable based on

26

events that post-date its filing (such as later substitution of a new plaintiff for an original plaintiff that lacked standing), and simply compels dismissal, regardless of whether a party with standing exists and is willing to join the case. These cases rely on the nullity doctrine (see *Cortlandt Street Recovery v. Hellas Telecomms.* (2d Cir. 2015) 790 F.3d 411, 425, 427 (conc. opn. of Sack, J.)) and invoke the same void *ab initio* principle the *Oliver* court uses. The cases are from one branch of a split in federal authority. (*Id.* at pp. 425–427.) What is most important to appreciate about them is that they rest, ultimately, on constitutional standing requirements unique to the federal courts. (See, e.g., *House v. Mitra QSR KNE LLC*, *supra*, 796 Fed.Appx. 783, 786 ["If a party does not have standing, then there is no federal jurisdiction, and 'the only function remaining to the court is that of announcing the fact and dismissing the cause.' "].)[11]

Under California law, by contrast, "lack of standing as a real party in interest is not jurisdictional; it is equivalent only to a failure to state a cause of action." (*County of Riverside v. Loma Linda University* (1981)

---

[11] As explained in *The Rossdale Group, LLC v. Walton* (2017) 12 Cal.App.5th 936 (*Rossdale Group*), " 'Properly understood, the concept of [Article III "standing"] contemplates a requirement that the plaintiff "establish an entitlement to judicial action, *separate from proof of the substantive merits* of the claim advanced." (13A Wright et al., Federal Practice and Procedure (3d ed. 2008) § 3531, p. 6, italics added.) This concept "has been largely a creature of twentieth century decisions of the federal courts." (*Ibid.*, fn. omitted.) It is rooted in the *constitutionally limited subject matter jurisdiction* of those courts. (See *id.* at p. 9 ["The threshold requirements are attributed to the 'case' and 'controversy' terms that define the federal judicial power in Article III. Absent constitutional standing, [*federal*] *courts believe they lack power to entertain the proceeding*." (italics added)]; see 13 Wright et al., *supra*, § 3522, pp. 103–104 [presumption that federal court lacks subject matter jurisdiction].)' " (*Rossdale Group*, at p. 944.)

118 Cal.App.3d 300, 319; see *Rossdale Group*, *supra,* 12 Cal.App.5th at p. 944.) Nor is lack of standing a defect of constitutional magnitude. It may have been "common sense" to the *Oliver* panel that "courts sit to settle disputes between existing parties" (*Oliver*, *supra,* 222 Cal.App.2d at p. 538), but the idea that " 'concrete adverseness' " is always fundamental to the exercise of judicial power has not been constitutionalized under California law in the way that it has been under federal law.[12] A superior court is a court of general jurisdiction (2 Witkin, *supra*, Courts, § 265, p. 323 ["the superior court has general jurisdiction in all cases in law and equity"]), and while there may be statutory limitations on subject matter jurisdiction in some instances, the constitutional baseline is that we presume the court's power to decide cases in equity and "in all other causes." (Cal. Const., art. VI, § 10; see *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 342.)[13]

---

[12] *United States v. Windsor* (2013) 570 U.S. 744, 760 [133 S.Ct. 2675, 186 L.Ed.2d 808]; see *Flast v. Cohen* (1968) 392 U.S. 83, 95 [88 S.Ct. 1942, 20 L.Ed.2d 947] ("In part [the] words ['cases' and 'controversies'] limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.").

[13] This presumption is consistent with section 11 of the Restatement Second of Judgments ("A judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action."), which contrasts sharply with an earlier counterpart, section 7 of the Restatement of Judgments (1942) ("A judgment is void if it is not rendered by a court with competency to render it."). (See Rest.2d Judgments, § 11, reporter's note, p. 114 [approach used in Restatement Second of Judgments, "reflecting common legal usage in this country," "departs from the first Restatement" in that "the requirement of subject matter jurisdiction is stated positively, rather than in the negative form that a judgment by a court lacking competency is 'void' "].)

28

The claims alleged in this case fall comfortably within the reach of this broad grant of general jurisdiction, and MAM points to no statutory limitation that might require a contrary conclusion. In effect, MAM invites us to " 'import[] federal-style "standing" requirements' " (*Rossdale Group, supra,* 12 Cal.App.5th at p. 944), borrowing from a line of precedent that, even in the federal courts, "has met with some criticism" (*Cortlandt Street Recovery v. Hellas Telecomms., supra,* 790 F.3d at p. 423). These cases cut against the "modern 'judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff.' " (*Id.* at p. 421.) We decline to adopt this ascetic strain of federal authority. Under California law, it is enough to say that MAM has failed to overcome the default presumption of subject matter jurisdiction in our courts.[14]

Falling back to a secondary line of argument, MAM claims that Dupree's proposed first amended complaint failed to state "viable causes of action." It is true that "[f]undamental or 'subject matter' jurisdiction relates to the inherent authority of the court to decide the case or matter before it . . .

---

[14] Many of the state court decisions applying the nullity doctrine to disallow curative amendments rely in part on federal authority, without acknowledging or appearing to appreciate that the issue arises there in the context of constitutionally limited federal jurisdiction. (*Ante,* p. 20, fn. 9; see *Garlock Sealing Technologies, LLC v. Pittman, supra,* 2010 WL 4009151, at *4; *Back-Wenzel v. Williams, supra,* 109 P.3d at p. 1196; *Black Canyon Coalition v. Bd. of Co. Com'rs, supra,* 80 P.3d at pp. 933–935; *Gregory v. DiCenzo, supra,* 713 A.2d at p. 775.) Perhaps there is an arguable basis for continuing to recognize and apply the nullity doctrine in courts of limited jurisdiction (Rest.2d Judgments, § 11, com. d, p. 111 ["[t]he proposition that the subject matter jurisdiction of a court could be questioned in an attack after judgment originally found expression in the English common law courts in cases dealing with judgments of courts of limited jurisdiction"]), but we see no basis for it within a state court system of general jurisdiction, at least not in California.

[and that] no court has inherent authority to decide a matter for which there is no legally recognized cause of action." (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 383, citation omitted; see *Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1087–1088.) But Dupree did not propose some novel claim or form of relief unrecognized in law or equity. He sought to bring conventional claims, often made in contests over title to real property, seeking typical relief for such claims. If he fails to prove the elements of those claims, that may defeat the claims on the merits, but it would not be a problem of subject matter jurisdiction.

MAM insists that Dupree failed to allege "any facts" and failed to present "any evidence" supporting his claims for reformation and to quiet title (even though CIT Bank already answered these claims as alleged in the original complaint, before MAM's intervention, and has never raised any of the legal defects MAM now identifies). MAM also points out that certain new claims added for the first time in Dupree's proposed first amended complaint (breach of the covenant of good faith and fair dealing, negligence, elder abuse) are legally deficient. None of these substantive attacks on the claims in Dupree's proposed first amended complaint was presented in the trial court in MAM's opposition to Dupree's motion seeking leave to amend. Some may have merit. Some plainly do not. But taken as a whole, they do not make Dupree's proposed first amended complaint futile in its entirety, justifying outright denial of the proposed amendment.

Here on appeal, we decline to entertain in the first instance what amounts to a general demurrer attacking the legal sufficiency of all of Dupree's proposed claims, or in the case of some of the claims—the requests for reformation and to quiet title—what is effectively a summary adjudication motion. Of course, we may affirm a challenged order on appeal on any

30

available legal ground, but none of MAM's newly advanced substantive legal grounds for affirmance constitutes a "silver bullet" that renders pursuit of the proposed first amended complaint a wholly futile endeavor. If MAM has grounds for a dispositive motion winnowing the claims in this case, that motion should be presented to the trial court.

## 2. Prejudice

Dupree's reason for the delay in seeking to substitute himself into the case as plaintiff—that he was unaware the Trust lacked legal capacity to sue until MAM raised the issue in September 2020—is undisputed. It cannot be said, on this record, that he was derelict in failing to notice the error before that date. Both sides in this case have showed considerable inattention to naming the proper parties to the suit. On the plaintiff's side, Dupree mistakenly named the Trust twice, once in the original complaint in 2017 and once in an amended complaint in 2018, and no demurrer raising that issue was forthcoming from the defense. On the defendant's side, Chiarelli and Associates (Chiarelli), counsel for CIT Bank, made the same mistake. Chiarelli filed a cross-complaint for CIT Bank in 2019, even though by then CIT Bank was no longer the assignee of FFSF, and at least according to MAM, "no longer ha[d] any interest" in the line of credit loan. The cross-complaint also named the Trust as cross-defendant.

So far as we can discern, the prejudice here was simply that the case had been pending for several years when Dupree sought leave to amend. Absent some kind of disadvantage to MAM's defense linked to the passage of time—such as faded memories or lost evidence—delay in and of itself was not a valid reason to deny amendment. (*Deetz v. Carter* (1965) 232 Cal.App.2d 851, 857–858 [leave to amend causes no prejudice where defendant makes no attempt to claim it had defenses that would have been raised but for the belated amendment]; *Landis v. Superior Court* (1965) 232 Cal.App.2d 548,

31

557 [finding it "unreasonable to deny a party the right to amend where the only apparent hardship to the defendants [was] that they [would] have to defend"].)

There appears to be no such disadvantage on this record. The absence of any material prejudice to MAM is evident from what happened procedurally. MAM had ample notice of the reformation, quiet title and declaratory relief claims Dupree proposed to pursue, since they were the same claims the Trust sought to pursue, and MAM was able to mount a vigorous defense on the merits in its motion to expunge. As Dupree points out, none of those arguments would have been different if the name of the plaintiff had been correctly stated at the outset of the lawsuit.

An amendment causes no prejudice where it makes no difference in the proof and involves no unfairness. (*Posz v. Burchell* (1962) 209 Cal.App.2d 324, 334.) According to Dupree, that is exactly what we have here. Indeed, he goes further. As he sees things, his "claim for reformation of the loan documents to exclude [Parcel Two] was bound to succeed at trial" and MAM's "only hope was to find some technical defect in [the reformation] . . . claim." While we conclude the order of dismissal must be reversed, we do not share Dupree's certitude that an outcome for him is foreordained.

There is evidence and reasonable room for debate on both sides of this case. On the strength of the loan underwriting documents, Dupree makes a plausible case that Ms. Redland and FFSF mutually intended only Parcel One to be encumbered. But based on the plain terms of the deed of trust—read together with the alleged fact that Parcel One is landlocked—MAM makes an equally plausible case that Parcel Two was to be encumbered as well, or at least that the parties understood any owner of Parcel One would have an easement running through Parcel Two by implication. Although

32

Dupree insists that Parcel One is not landlocked, that dispute of fact cannot be determined as a pleading matter.

Dupree's proposed amended complaint alleges that, as a matter of law, reverse mortgages can only secure residential property. Even assuming it is true reverse mortgages can only secure residential property—a proposition of law we need not address, for it is premature to do so—where the value of residential security is inextricably tied to an easement, a reasonable argument can be made that the security should at least include the easement. Ultimately, the resolution of this and all other merits issues must await more fulsome development of the evidentiary record at trial, or short of that, a dispositive pretrial motion.

## IV. DISPOSITION

Reversed. Costs on appeal shall be awarded to Dupree.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

33

Trial Court:  Superior Court of California, County of Del Norte

Trial Judge:  Hon. Darren McElresh

Counsel:      Moskovitz Appellate Team, Myron Moskovitz for Plaintiff and
Appellant.

Hinshaw & Culbertson, Peter L. Isola and Brian S. Whittemore
for Defendants and Respondents.

*Dupree v. CIT BANK, N.A. et al.* – A163903